DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas reversing the decision of appellant, City of Toledo Plan Commission. For the reasons that follow, we affirm the decision of the common pleas court.
 {¶ 2} This matter concerns two buildings at 823 and 825 Summit Street owned by appellee, Holy Trinity Greek Orthodox Cathedral of Toledo, Ohio. On May 3, 2004, appellee applied for a certificate of appropriateness to have the buildings demolished. Pursuant to city ordinance, the application was given to the Vistula Historic District Commission ("VHDC") for consideration. VHDC created a three-member economic review panel ("the panel") to review the evidence on the economic return issue. Two of the three panel members recommended denying the certificate of appropriateness to demolish the buildings.
 {¶ 3} In a letter dated March 16, 2005, VHDC denied appellee's application. Appellee then sought a review by appellant. Appellant ultimately affirmed VHDC's denial of appellant's application. The matter was appealed to the common pleas court, where the decision to deny the application was reversed. The trial court instructed appellant to grant appellee's application for demolition of the buildings. The appeal to this court followed.
 {¶ 4} Appellant raises the following sole assignment of error:
 {¶ 5} "The trial court erred in finding that the denial of an application for a demolition permit by the City of Toledo Planning Commission was not supported by a preponderance of substantial, reliable and probative evidence."
 STATEMENT OF FACTS {¶ 6} The following relevant evidence was presented to appellant at its hearing, held May 12, 2005. The structure at 823 N. Summit formerly housed Theo's Restaurant. The structure at 825 N. Summit formerly housed The Mission Restaurant. On May 3, 2004, appellee applied for a certificate of appropriateness to have the buildings demolished. The buildings have been vacant since 1993.
 {¶ 7} The panel created pursuant to Toledo Municipal Code 1111.1108(K) consisted of: 1) Paul Sieben, selected by appellee; 2) Mike Young, selected by VHDC; and 3) Paul Sullivan, selected by Paul Sieben and Mike Young. Each member of the panel submitted a separate letter of evaluation and recommendation to VHDC, although there was no formal written report created by the panel as a whole. Two of the three panel members recommended against issuing the demolition permit to appellee, and VHDC followed that recommendation and denied appellee's application to demolish the buildings. In a letter dated March 16, 2005, the Secretary of VHDC, Tom Gibbons, stated the reasons for the denial:
 {¶ 8} "This disapproval was given for the following reason:
 1. This structure contributes to the historic character of the Vistula Historic District and the neighborhood.
 2. The Economic Review Panel has determined that there is an economic return for the buildings." {¶ 9} On March 18, 2005, appellee filed an appeal of this decision to appellant. On May 12, 2005, appellant held a hearing, receiving testimony from various individuals. At the hearing's conclusion, appellant voted 5 to 0 to uphold VHDC's decision to deny appellee's request to demolish the buildings. On June 9, 2005, appellee appealed this decision to the Lucas County Court of Common Pleas pursuant to R.C. 2506.01.
 {¶ 10} On March 20, 2006, upon review of the parties' briefs, witness testimony and evidence as found in the transcript of the May 12, 2005 administrative proceedings, the trial court held that appellant's decision to deny the demolition applications was not supported by the preponderance of substantial, reliable, and probative evidence. The court found that appellee had met its burden for demonstrating economic hardship and all the criteria supported the approval of appellee's applications for demolition. Specifically, following the rationale of this court from Diocese of Toledo v. Toledo City-Lucas County PlanCommissions (March 12, 1999), 6th Dist. No. L-98-1150, the trial court concluded that the amount of gain after renovation of the structure could not earn a reasonable economic return.
 LAW AND STANDARD OF REVIEW {¶ 11} R.C. 2506.01 provides that "[e]very final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas * * * ." R.C.2506.04 sets forth that on review of an administrative order, a trial court "may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." Included in the court's review of the "whole record" is "any new or additional evidence admitted under R.C.2506.03 * * *." Henley v. Youngstown Bd. of Zoning Appeals (2000),90 Ohio St.3d 142, 147.
 {¶ 12} Our review in an R.C. 2506.04 appeal is more limited in scope. " `[The] statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. Within the ambit of `questions of law' for appellate court review would be abuse of discretion by the common pleas court." Id., quoting Kisil v. Sandusky (1984),12 Ohio St.3d 30, fn. 4. The Supreme Court of Ohio has stated that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 13} Toledo Municipal Code 1111.1108 sets forth the rules concerning an application for a certificate of appropriateness to demolish a structure within a designated historic district. Section 1111.1108(A) states, in pertinent part, as follows:
 {¶ 14} "* * * the respective Historic District Commissionmust grant the application and issue the certificate when one or both of the following conditions are found to exist:
 {¶ 15} "1. The structure for which demolition is sought contains no features of architectural or historic significance, and it does not contribute to maintaining the character of the Historic District;or
 {¶ 16} "2. There is no reasonable economic return for the structure as it exists and there is no feasible alternative to demolition submitted to the applicant by concerned organizations or individuals who wish to preserve the structure." (Emphasis added.)
 {¶ 17} Appellee does not dispute that the buildings contribute to maintaining the character of the historic district. Rather, appellee relied on subsection (2) as the basis for its application. Because subsections (1) and (2) are separated by "or", appellee only needed to prove one or the other, not both, to have its application granted. Hence, pursuant to 1111.1108(A), if the evidence established that there was no reasonable economic return for the structure as it exists and there is no feasible alternative to demolition submitted to the applicant by concerned organizations or individuals who wish to preserve the structure, then VHDC was required to grant the application and issue the certificate.
 {¶ 18} In order to prove hardship that would justify the approval of a demolition application as provided for in Section 1111.1108(A)(2), VHDC must find that the building is incapable of earning a "reasonable economic return." Toledo Municipal Code 1111.1108(A)(2). Standards and criteria to be considered by VHDC, in this regard, include the following items:
 {¶ 19} "1. Alternative uses and the economic return they will earn in relation to all the following:
 {¶ 20} "a. Estimate of the cost of the proposed redevelopment, alteration, demolition, or removal and an estimate of any additional cost that would be incurred to comply with the recommendations of the Historic District Commission for changes necessary for the continued use of the building and the issuance of a Certificate of Appropriateness;
 {¶ 21} "b. A report from a licensed engineer or architect with experience in rehabilitation as to the structural soundness of the structures on the property and their suitability for rehabilitation, including any existing evidence that deterioration has progressed to the extent that rehabilitation is not practical;
 {¶ 22} "c. Estimated market value of the property in its current condition, based on an independent MAI-certified appraiser; after completion of the proposed redevelopment, alteration, demolition or removal; and after changes recommended by the Historic District Commission for the renovation of the existing property for continued use; and
 {¶ 23} "d. Testimony from a third party architect, developer, appraiser, or other real estate professional experienced in rehabilitation as to the economic feasibility of rehabilitation or reuse of the existing structure on the property, taking into consideration any existing evidence that deterioration has progressed to the extent that rehabilitation is not practical.
 {¶ 24} "2. The current economic return on the property in relation to all the following:
 {¶ 25} "a. The amount paid for the property, the date of purchase, and the party from whom purchased, including a description of the relationship, if any, between the owner of record or applicant and the person from whom the property was purchased;
 {¶ 26} "b. If the property is income-producing, the annual gross income from the property for the previous two years; itemized operating and maintenance expenses for the previous two years; and depreciation deduction and annual cash flow after debt service, if any, during the same period;
 {¶ 27} "c. Real estate taxes for the previous two years and assessed value of the property according to the most recent assessed valuation; and
 {¶ 28} "d. All appraisals obtained within the previous two years by the owner or applicant in connection with the purchase, financing or ownership of the property.
 {¶ 29} "3. The property is not able to be sold, considered in relation to any listing of the property for sale or rent, price asked, and offers received, if any, within the previous two years, including testimony and relevant documents regarding:
 {¶ 30} "a. Any real estate broker or firm engaged to sell or lease the property;
{¶ 31} "b. Reasonableness of the price or rent sought by the applicant; and
 {¶ 32} "c. Any advertisements placed for the sale or rent of the property.
 {¶ 33} "4. Economic incentives and/or funding available to the applicant through federal, state, city or private programs.
 {¶ 34} "5. Other information considered by the respective Historic District Commission to be significant in determining whether the property does yield or may yield a reasonable return to the owner." Toledo Municipal Code 1111.1108(B)
 {¶ 35} Additionally, "[f]or applications based on a lack of reasonable economic return, the applicant has the burden of showing that the property in question is incapable of earning a reasonable economic return in the absence of the proposed demolition." Toledo Municipal Code 1111.1108(D)(4). "The showing shall be made in accordance with the standards and criteria set forth in Section 1111.1108B." Id. Further, according to section 1111.1108(L):
 {¶ 36} "If, after reviewing all of the evidence, the Historic District Commission finds as follows below, then the Historic District Commission must issue the Certificate of Appropriateness, conditionally or otherwise. If the Historic District Commission finds that the standards, criteria, and requirements are not satisfied, the Certificate of Appropriateness will be denied. For the Certificate to issue, the Historic District Commission must find that:
 {¶ 37} "1. The standards and criteria set forth in Section 1111.1108B. are satisfied; and
 {¶ 38} "2. There is no feasible alternative to demolition, per the requirements of paragraph C. above."
 {¶ 39} Toledo Municipal Code 1111.1108(N) states, with respect to the applicant's responsibilities, the following:
 {¶ 40} "During the waiting period, the owner of such structure must maintain or mothball the structure to prevent further deterioration. If the application for a Certificate of Appropriateness is denied, the applicant must develop a program for continuing maintenance for the structure to ensure that the deterioration of the structure is not caused by the neglect of the structure by its owner or by a tenant. Such program must address the condition of the structure, the money currently available for repairs and maintenance, and any funds or in-kind assistance that may be available from interested third parties."
 ANALYSIS {¶ 41} In reversing the decision of appellant, the trial court concluded that appellee had "met its burden for economic hardship and all of the criteria support the approval of [appellee's] applications for demolition of the buildings at 823 and 825 Summit Street pursuant to TMC § 1111.1108(A)(2)." Hence, we are left with reviewing the standards and criteria listed in section 1111.1108(B) to determine whether the trial court abused its discretion in concluding that appellee proved that the buildings were incapable of earning a reasonable return.
 {¶ 42} Focusing on the fact that there were a greater number of witnesses at the hearing who opposed the demolition, appellant contends that the trial court abused its discretion when it weighed the evidence presented to appellant and concluded that appellant's decision to deny the demolition application was not supported by substantial, reliable and probative evidence. Appellant also asserts that the trial court erred in relying on this court's precedent in Diocese of Toledo v.Toledo City-Lucas County Plan Commissions (March 12, 1999), 6th Dist. No. L-98-1150.
 {¶ 43} With regard to the latter argument, appellant contends thatDiocese of Toledo is distinguishable because the property at issue in that case had been declared a public nuisance. In Diocese ofToledo, this court reversed the denial of demolition of property owned by the diocese, which coincidentally, because of post-application deterioration, had been declared a public nuisance. We recognized that it is good policy to discourage an applicant from deliberately allowing a structure to further deteriorate to ensure a ruling that "rehabilitation is not economically sound." However, in Diocese ofToledo, we took this factor out of the analytical picture by considering the property as it existed around the time the diocese filed its application for demolition. This court then proceeded with review of the economic factors.
 {¶ 44} In the present case, there was testimony from two witnesses regarding neglect of the buildings. However, Paul Sieben, president of appellee's parish council, testified that appellee recently had spent money and "took extensive means" to secure the building from vandalism or theft. Thus, the trial court did not abuse its discretion in finding that appellee did not deliberately allow the structures to further deteriorate. We now review the economic factors.
 {¶ 45} Toledo Municipal Code 1111.1108(B)(3) calls upon VHDC to consider whether the property could be sold. At the hearing before appellant, evidence was produced that the property was listed with a realtor. However, similar to Diocese of Toledo, no offer was ever tendered to appellee. Although appellee had some preliminary discussions with WGTE, a local public broadcaster, ultimately, WGTE decided that the space could not be configured to meet its needs.
 {¶ 46} Further, Toledo Municipal Code 1111.1108(B)(4) states that VHDC is required to consider "[e]conomic incentives and/or funding available to the applicant through federal, state, city or private programs." When questioned by a plan commission member about the actual availability of such incentives, Kim Cutcher from the NorthRiver Development Corporation gave a tentative response of "I think so . . . yes." However, Sieben testified that he had met with Cutcher numerous times in an effort to explore incentives and none came to fruition.
 {¶ 47} Sieben, an architect, developer and contractor testified that it was not economically feasible for appellee to maintain, remodel or convert the buildings given an estimated remodeling cost of between $600,000 and $916,000, depending on whether the structures were used for commercial or residential purposes. Sieben's low-end figure was supported by an August 2001 restoration company estimate from OBI, Inc.. Sieben concluded that with these high costs, it was not feasible for a developer to receive the minimum expected ten percent return on investment.
 {¶ 48} In contrast, Paul Sullivan, an architect, testified that the cost of remodeling could be as low as $72 per square foot or $576,000. Sullivan further made reference to possible incentives available including a 20% federal tax credit and a city "facade program." However, as pointed out by Sieben, none of the concerned organizations or individuals who testified at the hearing submitted evidence that the incentives were available for a specific project. Further, similar toDiocese of Toledo, none of these individuals or organizations submitted a truly feasible or economically sound alternative to demolition.
 {¶ 49} We find that by applying the facts to the standards and criteria to be considered by VHDC and appellant, pursuant to section 1111.1108(B) of the Toledo Municipal Code, all the criteria supports the approval of appellee's application, pursuant to section 1111.1108(A)(2) of that code.
 {¶ 50} Accordingly, we find as a matter of law that the decision of the common pleas court is supported by a preponderance of reliable, probative and substantial evidence. See Kisil, 12 Ohio St.3d at 34. The common pleas court did not abuse its discretion in finding that appellant's denial of appellee's application for demolition was not supported by a preponderance of reliable, probative and substantial evidence. We therefore find appellant's sole assignment of error not well-taken.
 {¶ 51} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
MARK L. PIETRYKOWSKI, J., JUDGE; ARLENE SINGER, P.J., JUDGE; WILLIAM J. SKOW, J., JUDGE Concur.